

Henry E. Mazurek
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

February 19, 2021

**VIA ECF**

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 518
New York, NY 10007

    Re:    *United States v. Moises Lluberes*, 20-cr-493 (VSB)

Dear Judge Broderick:

    We represent Defendant Moises Lluberes in the above-captioned matter. We respectfully submit this letter motion to modify his bail conditions by releasing $230,000 of the $286,588.16 cash portion of his bond. Mr. Lluberes requests this modification to allow him to fund his legal defense with counsel of his choice against the charges in the Indictment. *See* Sixth Amend. ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."). Because Mr. Lluberes has an express Sixth Amendment right to counsel of his choice, a presumption of innocence, and the financial inability to pay for legal fees absent the release of the restrained bail funds, the Court should grant his request.[1] Moreover, and most significantly for purposes of this bail motion, this additional money is unnecessary to reasonably assure Mr. Lluberes' future appearances in court. His perfect record on pretrial supervision over the last four months (he was released to home confinement on October 20, 2020), and the fact that these funds will not be available for his personal use other than to pay his lawyers to defend this case, does not add to the risk of flight. Lastly, these funds are not subject to other government liens or judgments.

---

[1]     Mr. Lluberes has authorized counsel to request that the Court release $230,000 (the amount owed pursuant to our firm's engagement agreement with him) directly to defense counsel's account on his behalf, which will ensure that these funds cannot be used as resources to fund possible flight from the country. He also authorizes us to disclose our engagement agreement to the Court *in camera* to confirm the financial terms of our firm's representation.

**I.      Background**

   **A.      *Mr. Lluberes' Current Bail Order***

This Court granted bail to Mr. Lluberes by Order dated October 16, 2020. *See* ECF Doc. 28. The Court required multiple conditions to secure his release. These principally are: (1) a $500,000 personal recognizance bond, partially secured by cash proceeds from his Coinbase digital currency account, encumbrances on his primary residence in Winter Garden, Florida and his investment property in the Dominican Republic,[2] and finally through the financial responsibility of three co-signors; (2) home detention with electronic monitoring and GPS-tracking; (3) surrender of his travel documents and execution of an extradition waiver from the Dominican Republic by affidavit; and (4) pretrial supervision in the Middle District of Florida. *See id.* at 1. We have conferred with the supervising Pretrial Services officer in Florida, who has confirmed that Mr. Lluberes has perfectly complied with his home detention and movement restrictions over the last four months.

Because Mr. Lluberes has satisfied all of the bail conditions set by the Court, including encumbering all of his most significant assets, the portion of cash collateral that Mr. Lluberes now seeks to release for payment of legal fees represents only one part of the security used to satisfy his $500,000 personal recognizance bond.

   **B.      *Charges in the Indictment and Current Status of Discovery***

Mr. Lluberes worked for over 20 years at Resource Employment Solutions ("RES"), a staffing agency, which he helped found in approximately 1996. At its height, RES placed over 20,000 employees annually at approximately 20 locations, and had $160 million in annual revenue.

The charges in the Indictment, conspiracy to commit bank and wire fraud, wire fraud, bank fraud, and conspiracy to commit money laundering, relate to just a single set of allegations during a three-year period of Mr. Lluberes' employment at RES: that between 2017 and 2020, Mr. Lluberes allegedly participated in a scheme to falsely inflate the company's receivables, enabling RES to borrow funds to which it was not legitimately entitled. The Indictment further charges that Mr. Lluberes and others caused RES to pass the borrowed funds through two shell companies to promote and conceal the allegedly improper borrowing activity. The Indictment alleges that the bank from which RES borrowed the funds—the alleged victim—suffered losses. According to the Indictment, RES was also sold for an inflated price based on the allegedly improper borrowing activity; none of the charges, however, relate to the company's sale. Defending Mr. Lluberes against the Indictment will likely require careful analysis of RES' accounting, financial, and bank

---

[2]     The Government's discovery indicates that the property in the Dominican Republic was purchased for approximately $486,000. Thus, together with the remaining $56,000 in cash to be held by the Court, the security posted for Mr. Lluberes' bail still exceeds the $500,000 amount of the bond.

documents for a period of several years, as well as review of communications between Mr. Lluberes, his co-defendants, and other parties at RES, the bank and others.

The government has already produced over 77,000 pages of Rule 16 discovery, including over 25,000 pages of financial and accounting documents from RES, and over 20,000 pages of bank records for Mr. Lluberes, his co-defendants, RES and related companies. We understand that the government is currently in the process of producing an additional batch of discovery containing communications. We also have yet to receive any search results from the devices seized from Mr. Lluberes or his co-defendants. Given the quantity of Rule 16 discovery that remains outstanding, the real work defending Mr. Lluberes has only just begun.

## II. Release of Cash Bail Proceeds of $230,000 is Necessary to Fund Mr. Lluberes' Defense and Protect his Sixth Amendment Right to Counsel of his Choice

Under the Sixth Amendment to the Constitution, a criminal defendant has a right not only to be represented by counsel, but also "to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). As the Supreme Court has recognized, in light of counsel's crucial role in ensuring that a defendant receives the full protection that the law affords, the right to be represented by counsel of choice is nothing less than "the root meaning of the constitutional guarantee" enshrined in the Sixth Amendment. *Id.* at 147-48; *see also Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626 (1989) (the Sixth Amendment protects a defendant's right "to spend his own money" to obtain the assistance of counsel) (internal quotation marks omitted). Thus, the Sixth Amendment does not simply guarantee that a criminal defendant will have a lawyer; it also ensures that, within reasonable limits, he or she can have the lawyer they believe will best secure their rights. *United States v. Stein*, 541 F.3d 130, 154 n.14 (2d Cir. 2008) ("the Sixth Amendment right to counsel of choice has been regarded as the root meaning of the constitutional guarantee") (quotation marks and citations omitted).

Presently, however, because virtually all of Mr. Lluberes' financial resources are encumbered as security for his bail, he lacks the means to pay counsel of his choice. This reality has prompted our request now to release part of Mr. Lluberes' bail security for that exclusive purpose. Indeed, to avoid interfering with the accused's Sixth Amendment right to counsel, courts have routinely granted similar requests, releasing bail funds for payment of legal fees, recognizing that "financing of a defense is an acceptable basis for modifying the bail conditions." *United States v. Numisgroup Intern. Corp.*, 128 F. Supp. 2d 136, 150-51 (E.D.N.Y. 2000) (releasing $40,000 deposited with the court as part of the defendant's bail package, which consisted of "a bond secured by real property worth approximately $200,000 and $40,000 [cash]," so the defendant could "continue financing his defense"); *accord United States v. Brooks*, No. 06-cr-550, ECF Doc. 267 (E.D.N.Y. Jan. 16, 2009) (ordering release of $22.5 million of funds restrained as part of the defendant's bail package to the escrow account of defendant's counsel, and permitting the funds to "be used by defendant David H. Brooks for legal fees and expenses"); *United States v. Schwab*, No. 05-cr-6161L, 2007 WL 1133285, at *2-3 (W.D.N.Y. Apr. 16, 2007) (reducing the security for the defendant's $2 million bond from $700,000 to approximately $380,000 and releasing the remaining funds to permit the defendant to fund his legal fees); *see also United States*

*v. Shellef*, 756 F. Supp. 2d 280, 286 (E.D.N.Y. 2011) (Bianco, J.) (describing that the court previously "released $250,000 of defendant Shellef's bail to pay defense counsel's fees").

Mr. Lluberes disclosed his current financial position at the bail hearing before this Court. *See* Oct. 13, 2020 Bail Appeal Tr. at 29-45. His significant assets are all restrained for bail or previously encumbered. And, as the Court is aware, his closest relatives are either charged as co-defendants herein, including his brother Louis and live-in partner Maria Hewitt, or are without substantial assets. He has no other recourse to fund his defense at this time.

Respectfully, this Court should follow ample precedent and release cash funds in the amount of $230,000 for use by Mr. Lluberes to pay legal fees and expenses for counsel of his choice.

### III. Mr. Lluberes' Record of Compliance with His Bail Conditions Further Warrants Release of $230,000 Presently Deposited with the Court

Because in the four months since his release, Mr. Lluberes has proven his commitment to strictly adhering to his bail conditions, the full $286,588.16 of cash security remains unnecessary to continue to reasonably assure Mr. Lluberes' future appearances as required. His pattern of compliance weighs in favor of release of partial bail funds for payment of legal fees to protect the fundamental constitutional right of retaining counsel of choice. *See, e.g., Schwab*, No. 05-cr-6161L, 2007 WL 1133285, at *2-3 (releasing over $300,000 of the $700,000 security on the defendant's bond, explaining that the remaining security pledged and deposited with the court "should be a sufficient monetary condition to reasonably assure defendant's presence at trial"); *cf. United States v. Hatfield*, No. 06-cr-0550 (JS), 2010 WL 291765, at *1 (E.D.N.Y. Jan. 11, 2010) ("[t]he Court initially required $48 million in bail security based on its assessment of Mr. Brooks' flight risk. On January 11, 2009, the Court reassessed Mr. Brooks' flight risk and found that it warranted only $26 million or so in security.").

Indeed, the Pretrial Services Officer in the Middle District of Florida (Officer Charles Sweet) who supervises Mr. Lluberes on a daily basis confirmed his pristine record. Accordingly, Pretrial Services both in this District and in the Middle District of Florida take no position on this bail modification request. *See, e.g., United States v. Vasconcellos*, 519 F. Supp. 2d 311, 317-18 (N.D.N.Y. 2007) ("past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.") (quotation marks and citations omitted); *see also United States v. Dickson*, No. 17-mj-01086-JJM, 2017 WL 3667644, at *4 (W.D.N.Y. Aug. 25, 2017) (defendant's recent record of compliance with probation and supervised release conditions rebutted presumption of dangerousness under court's § 3142 analysis); 18 U.S.C. § 3142(c)(1)(B) (defendant's release required "subject to *the least restrictive* further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person.") (emphasis added). [3]

---

[3] Cases finding that a defendant's compliance with bail conditions does not constitute a "changed circumstance" are inapposite. In contrast to *United States v. Esposito*, 354 F. Supp. 3d

Demonstrably, Mr. Lluberes has no intention of fleeing. He is committed to litigating his case, clearing his name and remaining with his family. Mr. Lluberes simply would not abandon his close family—his brother, Louis, his niece, Maria Lopez, and his live-in partner, Maria Hewitt—who are co-defendants with him, or worse yet, risk their position with the Court by fleeing the jurisdiction. The fact that his co-defendants, some of the closest people in Mr. Lluberes' life, have likewise secured substantially all of their assets with the Court for their bail, and are being supervised under home detention and electronic monitoring should give further assurance to this Court that Moises Lluberes is not a flight risk. Mr. Lluberes' further commitment to use the bail money sought to be released exclusively for the purpose of funding his legal defense should likewise enhance his reliability to make all future court appearances; he is committing these funds for this very purpose.

In any event, the Court retains substantial security against any risk of flight—virtually *all* of Mr. Lluberes' personal net worth will still be encumbered. Both Mr. Lluberes' primary residence in Winter Garden, Florida and his home in the Dominican Republic remained pledged, nor will he have personal access to any of the funds liquidated from his Coinbase investment account. Indeed, this Court was very clear at the bail hearing that Mr. Lluberes should not gain personal access to these investments or their liquidation. He complied with this directive and now seeks only the release of funds for exclusive use for his legal defense, and the remainder will stay with the Court. The financial ruin facing his suretors (his daughter, his elderly mother, and his close family friend), if he were to violate his bail, will also continue to hold significant moral suasion against any risk of flight.

**IV.     The Government Has Not Demonstrated That These Funds are Tainted Proceeds**

It is our understanding that the government will oppose Mr. Lluberes' request based on the contention that the liquidated investments in his Coinbase account include tainted proceeds. But recent Supreme Court case law prohibits indefinite encumbrance of Mr. Lluberes' funds based on the government's unsubstantiated assertions.[4] Specifically, because Mr. Lluberes is presumed innocent of the charges against him and requires the assets at issue to fund his defense, *Luis v. United States*, 136 S. Ct. 1083 (2016), precludes their restraint without a rigorous analysis tracing

---

354 (S.D.N.Y. 2019), for example, Mr. Lluberes' compliance is not merely "a defendant's own evaluation of his character," *id.* at 361, but an objective record that the Court can rely on in considering the conditions necessary to assure his continued compliance. Moreover, here, the requested bail modification does not improve Mr. Lluberes' financial position or give him more resources with which to plan unauthorized travel. All funds requested release here will go directly to his lawyers, showing his commitment to defend the case lawfully in court.

[4]     In a February 11, 2021 email exchange, the government opposed the release of the Coinbase funds based only on the allegation that they are tainted proceeds. Notably, the government did not assert at that time that the full $286,588.16 currently deposited with the Court remains necessary to assure Mr. Lluberes' continued compliance with his conditions of release under 18 U.S.C. § 3142.

the assets to the crime. *Luis,* 136 S. Ct. at 1088, 1093-95 ("the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments," and that a tracing analysis is required "say whether a particular bank account contains tainted or untainted funds"). The government, however, has made no effort to meet *Luis'* exacting standards. At the bail hearing, it presented nothing more than bare allegations regarding the origin of Mr. Lluberes' funds—a far cry from the precise tracing analysis outlined in *Luis*. Importantly, Mr. Lluberes worked nearly twenty years at RES, which was an established business with millions of dollars of annual revenues. He went to work every day to earn his salary which became the capital used to invest in the Coinbase account. These funds were legitimate, and the government has not proved otherwise.

*Luis* squarely precludes the continued restraint of Mr. Lluberes' funds merely on the basis of the government's say so. Indeed, as in *Luis*, because Mr. Lluberes requires the Coinbase funds "to pay for the lawyer of h[is] choice," *id.* at 1093, their continued restraint could "itself suffice[] to completely deny this constitutional right." *Id.* at 1094. Given the primacy of Mr. Lluberes' Sixth Amendment right to counsel, the Court cannot continue to hold the funds based on the government's unsupported assertions of taint. *See id.* at 1094 (case law does not support restraint of untainted assets).[5] In any event, the funds requested to be released are currently only held as security for bail and are not the subject of the specific property forfeiture allegations specified in the Indictment. *See* Indictment ¶ 40.

In sum, the Court should release $230,000 from the cash deposited with the Court as bail security, for direct transfer to Mr. Lluberes' counsel's account, to allow Mr. Lluberes to fund his defense with counsel of his choice in accordance with fundamental Sixth Amendment rights.

Respectfully submitted,

/s/ HEM

Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein LLP
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Defendant Moises Lluberes*

cc: Counsel of record (*via ECF*)

---

[5] As *Luis* recognized, "Courts" and prosecutors frequently "use tracing rules in cases involving fraud, pension rights, bankruptcy, trusts, etc. They consequently have experience separating tainted assets from untainted assets." *Luis*, 136 S. Ct. at 1095 (citation omitted). In fact, the government performed a such tracing analysis in this case to seize accounts held by Mr. Lluberes' co-defendants. The government's inability to do the same here only further undermines any effort to restrain the funds at issue.