

*Henry E. Mazurek*
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

June 16, 2021

**VIA ECF**

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 518
New York, NY 10007

      Re:    *United States v. Moises Lluberes*, 20-cr-493 (VSB)

Dear Judge Broderick:

      We represent Defendant Moises Lluberes in the above-captioned matter. As directed by the Court during the June 9, 2021 telephonic hearing, we respectfully submit this letter, the declaration by Mr. Lluberes, and the exhibits thereto in further support of Mr. Lluberes' motion for a *Monsanto* hearing.[1]

      As the Court noted during the June 9 conference, in *United States v. Bonventre*, 720 F.3d 126 (2d Cir. 2013), the Second Circuit emphasized that "the importance of the right at issue, to fund one's criminal defense with counsel of choice, counsels in favor of a minimal barrier to contest the restraint of needed monies." Tr. 46:21-24 (quoting *Bonventre*, 720 F.3d at 131).[2] While even this "minimal barrier" to obtain a *Monsanto* hearing "requires more than a mere recitation [of the need for restrained funds]," *Bonventre* was clear that this showing remains a "low threshold requirement." *Bonventre*, 720 F.3d at 131.

      Recently, *United States v. Kolfage*, No. 20-CR-412 (AT), 2021 WL 1792052 (S.D.N.Y. May 5, 2021), reaffirmed the light evidentiary burden on defendants seeking a *Monsanto* hearing, explaining that it "is analogous to a defendant's burden under the Criminal Justice Act ('CJA') to show that [the defendant] is unable to afford representation." *Id*. at *5 (quotation marks and citations omitted); *accord United States v. Daugerdas*, No. 09-CR-581 (WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) ("A defendant seeking a *Monsanto* hearing bears the initial burden

---

[1] Mr. Lluberes' declaration, and the financial records attached as exhibits thereto are collectively marked Exhibit 1. Because of the sensitive financial nature of these materials, we respectfully request the Court's permission to publicly file a redacted copy of Exhibit 1.

[2] The transcript of the June 9, 2021 conference, referred to herein as "Tr.", is attached as Exhibit 2.

of demonstrating that he has no other assets available to retain counsel. This burden is analogous to a defendant's burden under the Criminal Justice Act ('CJA') to show that he is unable to afford representation"); *United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 1685826, at *1 (E.D.N.Y. Apr. 21, 2010) (granting a *Monsanto* hearing based on defense counsel's representations regarding the defendant's ability to continue paying counsel of choice).

Mr. Lluberes' detailed declaration and supporting documentation, collectively attached as Exhibit 1, easily clear this hurdle. His financial submission, which identifies with precision substantially *all* of his assets, clearly conveys that without the encumbered Coinbase assets he simply cannot afford counsel of choice. Mr. Lluberes' most significant assets—his homes in Florida and the Dominican Republic, a building in Ohio and the Coinbase funds—are all pledged as bail security in connection with this case. His only unencumbered assets are worth substantially less than the $230,000 necessary to fund Mr. Lluberes' legal defense: he has just under $13,000 in cash, and he owns a single car worth approximately $19,000.[3] Mr. Lluberes has nothing more.

---

[3] The amount sought by defense counsel to defend against the complex accounting fraud charged in the Indictment is more than reasonable given the nature of the charges and the voluminous and data-rich discovery produced by the government in support of its allegations. The Court is well aware that in similar cases, such as *Bonventre* cited *supra*, defense counsel have asked for fees exceeding $3 million. The amount requested here, and which the government seeks to put out of reach of the presumptively innocent defendant is paltry relative to the fees demanded in many "white collar" cases in New York. Mr. Lluberes' constitutional right to counsel of choice must be worth more in societal value than the relatively small sum the government seeks to keep Mr. Lluberes from using to defend himself. The government prioritizes instead its statutory prerogative to seek to protect $230,000 for the possible benefit of the Investor Group, a private-equity Connecticut fund that generates millions of dollars in profits per year. Notably, based on earlier court appearances in this case, this same Investor Group's legal representation has not been harmed by its inability to reach this $230,000 to date. It has retained a large law firm to represent its pecuniary interests in this case (as opposed to the liberty interests at stake for Mr. Lluberes). This representation likely will cost the Investor Group more in legal fees than the total amount sought by undersigned counsel to defend a federal criminal Indictment. The contrast here is striking between the constitutional right we seek to protect on behalf of Mr. Lluberes versus the financial protection the government seeks to enforce on behalf of the Investor Group. While the government claims a need to enforce a statutory mandate, its decision not to exercise any prosecutorial discretion in its enforcement authority is seriously troubling. The blanket enforcement of the broad federal forfeiture scheme has the distressing effect of voiding the constitutional right of counsel of choice for substantially all defendants charged with economic crimes except for the wealthiest of our citizens, or those protected by expensive insurance policies as directors or officers of public corporations. Here, a modestly successful businessman is prevented from retaining counsel of choice to defend against complex federal economic criminal charges, thereby putting him at even greater peril before he even gets the chance to defend himself (despite the other constitutional protection of the presumption of innocence). This is hardly a situation where the charged defendant is seeking to mount a million-dollar defense on the back of

Hon. Vernon S. Broderick
June 16, 2021
Page 3 of 4

---

The transparency that Mr. Lluberes has provided the Court into his total assets and comprehensive financial position contrasts sharply with the partial disclosures that troubled the Second Circuit in *Bonventre*. As the Court noted during the June 9 conference, in *Bonventre* the Second Circuit denied a *Monsanto* hearing because "the defendant 'did not disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses.'" Tr. 49:22-50:1 (quoting *Bonventre*, 720 F.3d at 133). The Second Circuit highlighted the glaring omissions in the *Bonventre* defendant's affidavits: "[w]hile the affidavits describe the aggregate balances of bank accounts enumerated in the government's submissions, they do not clarify whether Bonventre has access to other accounts and, if so, their value." *Bonventre*, 720 F.3d at 133. Mr. Lluberes' financial disclosure, however, is unambiguous. He presently has few unencumbered assets; far less than required to fund his defense.

Indeed, unlike the defendant in *Bonventre,* who was a very wealthy individual whose "attorney estimated that the cost of the criminal defense would likely reach $2.5 to $3 million," with "restrained accounts [of] $3.9 million," *Bonventre*, 720 F.3d at 133, Mr. Lluberes lives very modestly. While he clearly was a successful businessman in his career, he never made or spent millions of dollars per year. Thus, while the Second Circuit inferred that the *Bonventre* defendant had significant undisclosed assets based on his failure to explain how he paid his "significant living expenses," exceeding $15,000 per month, *id.*, there is no similar mystery as to Mr. Lluberes. Any excess in monthly expenses over income or savings simply adds to his debt burden. *See* Ex. 1, Lluberes Decl. ¶ 4.

Finally, the law does not require Mr. Lluberes to account for his disposition of the allegedly forfeitable funds to qualify for a *Monsanto* hearing—he need only demonstrate that he does not *currently* have sufficient funds to afford counsel of choice. *See Hatfield*, No. 06-CR-0550 (JS), 2010 WL 1685826, at *1 (rejecting the government's argument that the defendant was not entitled to a *Monsanto* hearing based on her receipt of the substantial allegedly fraudulent proceeds finding that "the fact that Ms. Hatfield *once* had substantial assets says nothing about whether she has substantial assets today"). Still, the government concedes that it has accounted for the expenditure of approximately $900,000 of the approximately $1 million in proceeds that Mr. Lluberes allegedly received in 2018 and 2019. *See* Tr. 33:13-15. Since 2018, when he began receiving funds from his brother, Moises Lluberes: (1) purchased and renovated his Dominican Republic home; (2) funded his Coinbase account; (3) paid taxes; and (4) supported his family, including his two college-aged children for whom he pays child support, and his fiance's 14-year-old son who Mr. Lluberes treats as his own child. To the extent there are $100,000 in funds not specifically traced over the last three years, it is not unreasonable to believe that this sum was spent and not saved. More relevant still to the Court's *Monsanto* hearing determination, even if Mr. Lluberes possessed

---

his alleged crime. Here, the defendant is seeking a modest amount to defend against a complex economic fraud indictment, to which he claims innocence, while the government restrains substantial sums of other assets to protect the pecuniary interests of its putative victim. In the vastness of our system's prosecutorial discretion, the decision not to apply it modestly here for purposes of constitutional protections to the accused leaves the public wondering whether we really have two systems of justice: a robust one for the super-wealthy and then a more perilous one for the rest of us.

Hon. Vernon S. Broderick
June 16, 2021
Page 4 of 4

---

the remaining $100,000 (which he does not), it would be insufficient to fully fund his defense by counsel of choice. Without the Coinbase funds, he simply does not have access to the assets necessary to pay for his legal defense by counsel of choice.[4]

Mr. Lluberes' sworn declaration and additional financial documentation more than satisfy the requirements of *Bonventre* that "the defendant must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice." *Bonventre*, 720 F.3d at 131. Accordingly, we respectfully request that the Court schedule a *Monsanto* hearing so that Mr. Lluberes may vindicate his Sixth Amendment right to counsel. *See United States v. Cosme*, 796 F.3d 226, 232 (2d Cir. 2015).

Respectfully submitted,

/s/ HEM

Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein LLP
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Defendant Moises Lluberes*

cc:   Counsel of record (*via ECF*)

---

[4] Moreover, the $100,000 for which the government cannot specifically trace coincidentally corresponds to precisely the sum that Mr. Lluberes received during this same time period from an unrelated and innocent insurance refund—it is demonstrably not traceable to any of the transactions alleged in the Indictment. *See* Tr. 38:14-21; Defense Ltr. Apr. 5, 2021 (ECF Doc. 48 Ex. B); Gov. Ltr. Apr. 9, 2021 (ECF Doc. 55) at 4 n.5. In any case, the government has the burden to prove that Mr. Lluberes' financial statement is somehow misrepresented. We have heard no evidence of this to date despite months of litigation on these issues. It has not presented this evidence because it does not exist.